# Mullin *v.* Montieth, Appellant.

*Bond—Lease—Quarry—Covenants.*

Judgment is properly entered upon a bond given to secure covenants contained in a lease of a quarry where it appears that defendants in violation of their agreement failed to take out 400 carloads per year, and that they failed to extend the quarry as provided by the lease, and merely confined their operations to digging in the loose earth in a portion of the quarry which had already been quarried out.

Argued Oct. 25, 1901. Appeal, No. 185, Oct. T., 1901, by defendants, from order of C. P. No. 3, Phila. Co., March T., 1899, No. 613, discharging rule to open judgment in case of Theresa Mullin v. Thomas Monteith and George H. Farrell. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Rule to open judgment.

From the record it appeared that judgment had been entered on a warrant of attorney accompanying the bond given to secure the performance of covenants contained in the leased quarry.

The material portions of the lease were as follows :

The parties of the second part are not to allow their employees to interfere in any way or to destroy anything on the farming portion of said tract of ground which is now leased by James Lister or to interfere in any way with any of the adjoining ground.

The parties of the second part are to have the right, however, to use such portions of said ground immediately adjacent to the quarry as is necessary for stripping and the proper working of the quarry.

The parties of the second part are to pay $1.00 per car quarryleave for all cars shipped from the quarry not exceeding 60,000

56    MULLIN *v.* MONTIETH, Appellant.

Statement of Facts—Opinion of the Court. [19 Pa. Superior Ct.

pounds capacity ; and for all 80,000 pound cars shipped from the quarry they are to pay $1.33 per car quarry-leave.

Settlements are to be made on the first day of each month for all cars shipped during the previous month, the same to be calculated according to the railroad company's record for the month.

The parties of the second part agree to take out and pay quarry-leave for not less than 400 cars per year, and are to have the privilege of renewing this lease on the same terms and condition for a further period of two years by giving the party of the first part three months' written notice prior to the expiration of this lease of their intention to do so.

Should the parties of the second part haul any stone from the quarry by team the party of the first part is to be allowed for them at the rate of five cents per perch, each horse is to be considered as hauling one perch and the party of the first part is to be paid for them at this rate.

The parties of the second part agree to give their joint bond in the sum of $800 for the faithful performance of their part of this agreement.

The party of the first part is to furnish the rails and ties necessary to extend the track from time to time for the proper working of the quarry.

This lease is to terminate and all rights under it to cease in any event at the expiration of three years from the date hereof.

From the evidence it appeared that the defendants failed to quarry 400 carloads per year, and also failed to extend the quarry in the manner provided by the lease. The testimony showed that they simply confined their operations to digging in the loose earth in a portion of the quarry which had already been quarried out. The court discharged the rule to open judgment.

*Error assigned* was the order of the court.

*A. S. Ashbridge, Jr.,* for appellants.

*Wayne P. Rambo,* for appellee.

OPINION BY BEAVER, J., January 21, 1902:

The defendants leased from the plaintiff, under a written

lease, a plot of ground of about eighteen acres, containing a stone quarry which had been operated for a number of years. The lease evidently contemplated the extension of the quarry, inasmuch as provision is made " to use such portions of said ground immediately adjacent to the quarry as is necessary for stripping and the proper working of the quarry, " and again, " the party of the first part is to furnish the rails and ties necessary to extend the track from time to time for the proper working of the quarry." The quarry had a railroad frontage of 1,200 to 1,500 feet, about 150 to 300 feet of which had been quarried over and a portion of it admittedly exhausted. Instead of driving through the solid rock along the railroad and opening up a quarry face toward the south, the defendants, who were not practical quarrymen and paid but little attention to the quarry, employed foremen who seemed to confine their attention to digging in the loose earth in the portion of the quarry which had already been quarried out, and shipped therefrom dirt and soft rock to the defendants at Philadelphia. The plaintiff had nothing whatever to do with the quarrying of the stone and is not in any way chargeable with the acts or omissions of defendants' foremen at the quarry.

It is very clear, from a careful reading of the testimony, that the defendants misunderstood the agent of the plaintiff as to the direction in which the quarry should be worked, and it is equally clear that their foremen, in order to show immediate results, worked over the offal of the abandoned part of the quarry in preference to extending the quarry through the solid rock. In speaking of the manner in which the cars were loaded, one of the foremen says : " I put several loads of good stone on top to make it look nice ; I was ashamed to send it."

It is admitted by the defendants that the stone adjoining the railroad at the eastern end of the quarry was solid and would have made good building stone, but that the face of the quarry was narrow at that point and that few men could work in it; but it is very clear that, if this face had been driven for some distance along the railroad and worked south, substantial and, in the end, profitable results would have been reached, although the expense connected with the opening might have been for some time disappointing.

The judgment, as originally entered, was upon a penal bond

in the sum of $800. It is admitted by the plaintiff that the amount due under the lease was $400, of which $42.00 have been paid. The amount for which plaintiff should be allowed to take out execution, therefore, is limited to $358, with interest from April 26, 1900, the day on which the lease terminated. Limiting the judgment, therefore, subject to execution process, to this amount, the decree is affirmed.